AMERICAN ACADEMY OF PAIN MANAGEMENT, a California non-profit corporation; Arnold Fox, M.D.; B. Elliot Cole, M.D., Plaintiffs–Appellants,

v.

Ronald JOSEPH, in his official capacity as the Executive Director of the Medical Board of California, Defendant–Appellee.

No. 01–15764.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 14, 2002.

Filed Jan. 2, 2004.

James J. Milam, Modesto, CA, for the plaintiffs-appellants.

Mara Faust, Deputy Attorney General, Sacramento, CA, for the defendant-appellee.

Before: SNEED, HUG and BERZON, Circuit Judges.

HUG, Circuit Judge.

This appeal concerns the constitutionality of a California statute that limits a physician from advertising that he or she is "board certified" in a medical speciality unless the certifying board or association meets certain requirements. The American Academy of Pain Management ("the Academy") and two of its member doctors, Dr. Arnold Fox, and Dr. B. Elliot Cole, (collectively "the Plaintiffs") brought this action for injunctive relief under 42 U.S.C. § 1983 against Ronald Joseph in his official capacity as the Executive Director of the Medical Board of California ("the Defendant"). The Plaintiffs contended (1) that the statute and regulations implementing the statute constitute an impermissible regulation of commercial speech in violation of the First Amendment; (2) that the statute and regulations are vague and over broad; (3) that the statute and the regulations deprive the members of the Academy of their First Amendment right to free association; and (4) that the action of the Medical Board of California in applying the statute denied the Plaintiffs due process. The district court granted summary judgment for the Defendant, and we affirm.

## I.

### FACTS AND PROCEDURAL HISTORY

California Business and Professions Code § 651 generally proscribes false and misleading advertising by health care professionals licensed by the state. Section 651(h)(5)(B) specifically regulates the advertising of physicians and surgeons. It permits them to indicate fields of specialization, but prohibits them from representing that they are "board certified" unless the certifying organization (1) is a member board of the American Board of Medical Specialties ("ABMS"), (2) has requirements equivalent to those of the ABMS, as determined by the Medical Board of California, or (3) has a postgraduate training program approved by the Accreditation Council for Graduate Medical Education ("Accreditation Council") that provides "complete training" in the designated specialty. *See id.* at § 651(h)(5)(B). The statute specifies that a physician or surgeon licensed under Chapter 5 by the Medical Board of California who is certified by an organization other than a board or association in one of the three categories "shall not use the term 'board certified' in reference to that certification" unless he or she is also licensed under Chapter 4. *Id.*[1] Those physicians and surgeons allowed to advertise that they are "board certified" must state the full name of the certifying organization, giving it comparable prominence with the term "board certified." *Id.*

Section 651(h)(5)(B) authorized the Medical Board of California to adopt regulations to administer the section. *See id.* These regulations are contained in Title 16 of the California Code of Regulations § 1363.5. They specify both the criteria that the Medical Board of California will use to determine whether a certifying organization possesses requirements equivalent to those of the ABMS and the procedures that govern applications for an equivalency determination by the Medical Board of California. *See* 16 Cal.Code Regs. § 1363.5. The regulations came into effect on February 28, 1994. *See id.* Certifying organizations had three years from this effective date to demonstrate their equivalency. *Id.* at § 1363.5(b)(8)(C).

Violation of section 651(h)(5)(B) is a misdemeanor punishable by up to six months in county jail and a fine of up to $2,500, an administrative fine of up to $10,000 per event, and possible revocation or suspension of the violator's license. Cal. Bus. & Prof.Code §§ 651(f),(g),(k), 652, & 652.5.

The Academy is a non-profit organization, incorporated in 1988, involved in developing standards enhancing education and issuing credentials for multi-disciplinary pain practitioners. Those disciplines include dentists, physicians, nurse anesthesiologists, psychologists, athletic trainers, chiropractors, counselors, social workers, physical therapists and practitioners of oriental medicine. On April 5, 1996, the Academy filed an application with the Medical Board of California, as the licensing board for physicians and surgeons, for recognition of the Academy's right to advertise by using the words "board certified." (Plaintiff's ER at 12). The Medical Board of California hired Dr. William Hamilton as a consultant to review the Academy's application and issue a report comparing the Academy's standards for certification with those of the ABMS to determine if they were equivalent.

---

1. Chapter 5 provides for the licensing under the category of "Medicine," which includes physicians and surgeons. Chapter 4 provides for the licensing under the category of "Dentistry," and the statute requires similar requirements for a dentist to represent or advertise specialization unless the accrediting organization is recognized by the Dental Board.

Dr. Hamilton concluded that the Academy fell far short of equivalency. The Academy does not require its members to have any formal postgraduate training, but instead requires only two years of experience working with patients having pain. The Academy examination consists of 100 multiple choice questions and takes approximately two hours to complete. The Medical Board of California regulations require that the examinations of certifying organizations be a minimum of sixteen hours in length, which is the examination requirement of ABMS. *See* 16 Cal.Code Regs. § 1363.5(b)(10). Moreover, Dr. Hamilton found that, as of March of 1996, more than eighty percent of the Academy's members had not taken the exam, but had been grandfathered into the Academy.

On February 7, 1997, the Medical Board of California denied the Academy's application for equivalency status. By this time, the Plaintiffs had filed a section 1983 suit in federal district court on December 6, 1996, alleging that section 651(h)(5)(B) violated their First Amendment rights. The complaint stated that the two individual plaintiffs, Dr. Fox and Dr. Cole, had advertised by way of letterhead that each is "board certified" by the Academy. Shortly before the end of the three-year grace period provided by the regulations, the Plaintiffs sought a temporary restraining order barring the Medical Board of California from enforcing section 651(h)(5)(B). The district court issued the temporary restraining order after an expedited hearing conducted the day before the grace period ended. Subsequently, the court dissolved the temporary restraining order and denied the Plaintiffs' motion for a preliminary injunction. The Plaintiffs appealed the decision to this court, which held that the district court had not abused its discretion in denying the preliminary injunction.

■ Both parties moved for summary judgment. The district court granted the Defendant's summary judgment motion on the Plaintiffs' claim that (1) section 651(h)(5)(B) and its implementing regulations, on their face, violate the First Amendment's guarantee of free speech, (2) section 651(h)(5)(B) and its implementing regulations, as applied to them, violate their rights to free speech, and (3) Plaintiffs' procedural due process rights were violated. Subsequently, both parties moved for summary judgment on the Plaintiffs' remaining claims. The district court granted the Defendant's motion and denied the Plaintiffs', ruling that section 651(h)(5)(B) and its implementing regulations are not unconstitutionally overbroad or vague and do not violate the Plaintiffs' rights to free association. The district court then entered final judgment. The Plaintiffs filed a timely notice of appeal. The Plaintiffs appeal all of the district court's rulings except the court's dismissal of their as-applied free speech claim. The district court had jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3). We have appellate jurisdiction under 28 U.S.C. § 1291. This court reviews de novo the district court's grant of summary judgment. *Delta Savings Bank v. United States*, 265 F.3d 1017, 1021 (9th Cir.2001). The district court's rulings on the constitutionality of the California statute and the implementing regulations are subject to de novo review. *Chamber of Commerce v. Argenbright*, 226 F.3d 1049, 1054 (9th Cir. 2000).

## II.

### *REGULATION OF COMMERCIAL SPEECH.*

The California statute in issue in this case is § 651(h)(5)(B) of the California Business and Professions Code. This section regulates the permissible advertising

of a physician or surgeon. It provides that:

A physician or surgeon ... may include a statement that he or she limits his or her practice to specific fields, but shall not include a statement that he or she is certified or eligible for certification by a private or public board or parent association, including but not limited to, a multidisciplinary board or association, unless that board or association is (i) an American Board of Medical Specialities Board member (ii) a board or association with equivalent requirements approved by that physician and surgeon's licensing board or (iii) a board or association with an Accreditation Council for Graduate Medical Education approved postgraduate training program that provides complete training in that specialty or subspecialty. A physician and surgeon ... who is certified by an organization other than a board or association referred to in clause (i), (ii), or (iii) shall not use the term "board certified" in reference to that certification.... A physician and surgeon ... who is certified by a board or association referred to in clause (i), (ii), or (iii) shall not use the term "board certified" unless the full name of the certifying board is also used and given comparable prominence with the term "board certified" in the statements.... For the purposes of the term "board certified," as used in this subparagraph, the terms "board" and "association" mean an organization that is an American Board of Medical Specialties member board, an organization with equivalent requirements approved by a physician and surgeon's licensing board, or an organization with an accreditation council for graduate medical education approved postgraduate training program that provides complete training in a specialty or subspecialty.[2]

The Defendant in the district court and on appeal contends that the essence of the statute is to regulate the use of the term "board certified" or its equivalent. The Defendant emphasizes throughout his brief on appeal that it is only the use of the term "board certified" or its equivalent that the Medical Board of California or the California Attorney General's office seeks to protect. It is apparent from the statute itself that the term "board certified" is what is sought to be protected. "A physician or surgeon ... who is certified by an organization other than a board or association referred to in clause (i), (ii), or (iii) shall not use the term "board certified" in reference to that certification.... The statute also provides "a physician and surgeon ... who is certified by a board or association referred to in clause (i), (ii), or (iii) shall not use the term "board certified" unless the full name of the certifying board is also used and given comparable prominence with the term "board certified" in the statement."

"Board certification" is a term of art that the ABMS popularized among physicians and has come to designate a certain level of qualification. This specialized meaning was emphasized in numerous affidavits that were filed with the district court. This was also recognized by the Supreme Court in *Peel v. Attorney Registration & Disciplinary Commission of Illinois*, 496 U.S. 91, 102 n. 11, 110 S.Ct. 2281, 110 L.Ed.2d 83 (1990), where the Court stated,

Board certification of specialists in various branches of medicine, handled by the 23 member boards of the American Board of Medical Specialties is based on various requirements of education, residency, examinations and evaluations.... The average member of the public does not know or necessarily understand

---

**2.** Section 651(h)(5)(B) is quoted in full in Addendum "A."

these requirements, but board certification nevertheless has "come to be regarded as evidence of skill and proficiency of those to whom they [have] been issued." American Board of Medical Specialties, Evaluating the Skills of Medical Specialities 1 (J. Lloyd and D. Langsley eds.1983).

The term "board certification" is also given a recognized meaning by the National Committee on Quality Assurance, which accredits health maintenance organizations in the United States. (Defendant's ER at 268–69, 270–77). Similarly, the term is given recognized meaning by the Joint Commission on Accreditation of Health Care Organizations, which accredits hospitals and other health care facilities in the United States. *Id.* at 268–69, 278–81. Thus, the term that the Medical Board of California and the California Attorney General seek to protect, "board certified," is a term with an established meaning connoting a high level of specialized skill and proficiency.[3] As noted earlier, the application of the Academy was to recognize its right to advertise by using the words "board certified" and advertisements of the individual plaintiffs was that they were "board certified" by the Academy.

The staff of the Medical Board of California, after presenting its detailed analysis of the Academy's application, concluded that the action to be taken was one of the following:

1. Vote to approve the (Academy) as equivalent to an ABMS Board, which will allow its members to advertise that they are "board certified."

2. Vote to disapprove the (Academy) as equivalent to an ABMS Board, which will prevent its members from advertising board certification.

(Defendant's ER at 45).

As stated in the Defendant's brief:

Business and Professions Code section 651(h)(5) and the board's regulation place *no general restrictions* on plaintiffs' member's right to advertise their membership in the (Academy). Nor does it prohibit their opportunity to advertise that they specialize in the field of pain management, or that they hold any other status with the Academy. Plaintiffs' members simply cannot use the term "board certified."

(Defendant's Brief at 35).

### A.

### *Is This Commercial Speech?*

The Plaintiffs contend that the district court erred in holding that section 651(h)(5)(B) and its implementing regulations regulate only commercial speech. They further assert that as a result the district court considered the statute and regulations under an unduly deferential standard of review, the intermediate scrutiny governing commercial speech.

---

3. The prohibition of the statute would also certainly apply to minor variations that convey the same meaning as "board certified." Thus, the statute proscribes the use of the word "eligible" for board certification by an unauthorized board, which conveys the same meaning as "board certification." Similarly, a use of the term "certified" by an unqualified board would convey the same meaning. The statute provides that for purposes of the term "board certified" the use of the terms "board" and "association" means an organization that meets the qualifications of the statute. Thus, if a physician were to advertise that he was certified by a board this would have the same meaning as "board certified." If the board did not qualify under the statute, then an advertisement that the physician was certified by a board that did not meet statutory qualification would be a violation of the statute.

■ Commercial speech represents "expression related solely to the economic interests of the speaker and its audience," *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 561, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980), and "does no more than propose a commercial transaction." *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 752, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976); *see also Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 554–55, 121 S.Ct. 2404, 150 L.Ed.2d 532 (2001) (applying the *Hudson* analysis to tobacco advertising regulations). In *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 103 S.Ct. 2875, 77 L.Ed.2d 469 (1983), the Supreme Court held that speech could properly be characterized as commercial when (1) the speech is admittedly advertising, (2) the speech references a specific product, and (3) the speaker has an economic motive for engaging in the speech. *Bolger*, 463 U.S. at 66–67, 103 S.Ct. 2875. *See also Ass'n of Nat'l. Advertisers, Inc. v. Lungren*, 44 F.3d 726, 728 (9th Cir.1994) (applying the *Bolger* factors).

■ All three of the *Bolger* factors are present in the speech that the California statute and regulations are designed to regulate. Section 651(h) specifies what information licensed physicians and surgeons may include in their "[a]dvertising." Permissible advertising content includes the practitioner's name, an office address and telephone number, hours of operation, foreign language ability, an approved board certification, insurance plans accepted, schools attended, publications authored, teaching positions held, hospital affiliations, fees charged, installment payments accepted, lawful images of the practitioner, the trade names of goods advertised, public health information, and other factual information that is not misleading. Cal. Bus. & Prof.Code § 651(h)(1)-(17). The statute thus identifies that the object of its regulation is "advertising." The ad-

vertising regulated relates to a specific product, medical services. Finally, the advertiser has an economic motive for engaging in this kind of speech, which is to solicit a patient base. Accordingly, the district court correctly applied the standard of intermediate scrutiny that governs commercial speech. *Cf. In re R.M.J.*, 455 U.S. 191, 194, 102 S.Ct. 929, 71 L.Ed.2d 64 (1982) (deeming a similar statute that specified ten permissible categories of information for lawyer advertisements was a regulation of commercial speech).

### B.

#### *Application of Central Hudson.*

■ In regard to the permissible regulation of commercial speech, the Supreme Court in *Central Hudson* stated:

> In commercial speech cases ... a four-part analysis has developed. At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

*Central Hudson*, 447 U.S. at 566, 100 S.Ct. 2343; *see also Clear Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810, 815 (9th Cir.2003) (applying the four-part *Hudson* analysis). Thus, the first inquiry is whether the speech is unlawful or misleading. If it is either, then the commercial speech is not protected at all by the First Amendment. In refining the commercial speech doctrine, the Supreme Court has distinguished between "inherently misleading" speech and "potentially

misleading" speech. *See R.M.J.*, 455 U.S. at 202–03, 102 S.Ct. 929. When "advertising is inherently likely to deceive or where the record indicates that a particular form or method of advertising has in fact been deceptive," the advertising enjoys no First Amendment protection. *Id.* The government may ban this type of commercial speech entirely without satisfying the remaining three *Central Hudson* factors. *Id.* However, if the speech is only "potentially misleading," in other words, "if the information also may be presented in a way that is not deceptive," the speech regulation must satisfy the remaining three factors specified in *Central Hudson. Id.* at 203, 102 S.Ct. 929.

### 1. *Unlawful or Misleading.*

The Defendant contends that the commercial speech that section 651(h)(5)(B) and its implementing regulations target is inherently misleading and may be restricted on that basis alone. The Defendant further contends that because California has defined "board certification," for the purposes of advertising, to mean a certification from an organization that satisfies particular standards, any advertisement of a "board certification" from an organization that does not meet the statutory criteria is inherently misleading. The Defendant's argument is that this advertising is inherently misleading because consumers will presume that the organization whose certification is advertised satisfies the California standards, when, in fact, it does not.

The Plaintiffs disagree, relying principally on *Peel v. Attorney Registration & Disciplinary Commission of Illinois.*, 496 U.S. 91, 110 S.Ct. 2281, 110 L.Ed.2d 83 (1990). In *Peel,* the Supreme Court held that an attorney's advertisement that he was a "Certified Civil Trial Specialist By the National Board of Trial Advocacy" was neither inherently nor actually misleading. *Id.* at 106, 110 S.Ct. 2281. The Illinois Supreme Court had concluded that the

attorney's use of the term "specialist" was inherently misleading "because it incorrectly implied that Illinois had formally authorized certification of specialists in trial advocacy." *Id.* at 99, 110 S.Ct. 2281. The United States Supreme Court disagreed, concluding that "it seems unlikely that petitioner's statement about his certification as a 'specialist' by an identified national organization necessarily would be confused with formal state recognition." *Id.* at 104–05, 110 S.Ct. 2281. In the *Peel* case, however, the ban was absolute. The Illinois Bar rule did not allow an attorney to hold himself out as certified by any board as a specialist. It was an absolute ban. Although the Court held that this absolute ban was unconstitutional, it stated that:

> To the extent that potentially misleading statements of private certification could confuse consumers, a state might consider screening certifying organizations or requiring a disclaimer about the certifying organization or the standards of speciality.

*Id.* at 110, 110 S.Ct. 2281. It was this screening process suggested in *Peel* that the California legislature has adopted. This case differs from the situation addressed in *Peel,* in that Illinois completely banned any advertisement of certification by a board. California, on the other hand, permits advertising of "board certification," provided that the certifying board meets the statutory qualifications.

The Supreme Court considered a similar case, *Ibanez v. Florida Department of Business and Professional Regulation,* 512 U.S. 136, 114 S.Ct. 2084, 129 L.Ed.2d 118 (1994). The Florida Board of Accountancy had disciplined a person who was practicing as a C.P.A. and an attorney for including on her stationery and in ads in the Yellow Pages "CFP," the designation for certified financial planner. The Flori-

da Board of Accountancy disciplined her for violation of a *board rule.* The rule prohibited any advertisement that stated or implied that the licensee had received formal recognition as a specialist in any aspect of a practice of public accounting unless the recognizing agency was approved by the Board of Accountancy. The Certified Financial Planner Board of Standards, Inc., which was the recognizing agency for the CFP designation, had not been approved by the Board of Accountancy.

The Court held that the use of CFP was not actually or inherently misleading.[4] The *Ibanez* case differs from the case at hand because the state had not set forth any statutory language establishing a screening process with specific standards as suggested in *Peel.* Furthermore, the discipline resulted from a board rule, not a statute, and the board had unguided discretion to ban any certifying organization.[5]

■ The State of California has by statute given the term "board certified" a special and particular meaning. The use of that term in advertising by a board or individual physicians who do not meet the statutory requirements for doing so, is misleading. The advertisement represents to the physicians, hospitals, health care providers and the general public that the statutory standards have been met, when, in fact, they have not.

Because the Plaintiffs' use of "board certified" is inherently misleading, it is not protected speech. But even if the Plaintiffs' use of "board certified" were merely potentially misleading, it would not change the result in this case, as consideration of the remaining three *Hudson* factors confirms that the State may restrict the use of the term "board certified" in advertising.

### 2. Does the Defendant Assert a Substantial Interest in Restricting the Speech?

■ The Defendant states that section 651(h)(5)(B) and its implementing regulations protect consumers. The Defendant explains that advertisements of certifications from non-ABMS-equivalent organizations are misleading because the public may assume that these organizations employ the same standards as ABMS member boards. Based upon this erroneous assumption, consumers may mistakenly believe that the advertiser possesses the same level of training and qualification as ABMS-certified physicians and surgeons.

■ There is no question that California has a substantial interest in protecting consumers from misleading advertising by medical professionals. *See Edenfield v. Fane,* 507 U.S. 761, 769, 113 S.Ct. 1792, 123 L.Ed.2d 543 (1993) (the state has a substantial interest "in ensuring the accuracy of commercial information in the mar-

---

4. The Court also held that the Board of Accountancy action was not justified on the basis that it was regulating potentially misleading speech because the other requirements of *Hudson* were not met. *Id.* at 146, 114 S.Ct. 2084.

5. Had a screening process been in effect, it would have been very difficult for the board to have disapproved the CFP Board of Standards as a recognizing agency. The Court noted that "certified financial planner" and "CFP" are well-established protected federal trademarks that have been described as "the

most recognized designation[s] in the planning field. Approximately 27,000 persons have qualified for the designation nationwide. Over 50 accredited universities and colleges have established courses of study in financial planning approved by the Certified Financial Planner Board of Standards, and standards for licensure include satisfaction of certain core educational requirements, [and] a passing score on a certification examination similar 'in concept to the bar or CPA examinations.' " *Id.* at 147–48, 114 S.Ct. 2084 (internal citations and quotations omitted).

ket-place"); *In re R.M.J.,* 455 U.S. at 202, 102 S.Ct. 929 ("The public's comparative lack of knowledge, the limited ability of the professions to police themselves, and the absence of any standardization in the 'product' renders advertising for professional services especially susceptible to abuses that the States have a legitimate interest in controlling."). The Supreme Court has noted the special interest that states have in regulating professions:

> We have little trouble crediting the Bar's interest as substantial. On various occasions we have accepted the proposition that "States have a compelling interest in the practice of professions within their boundaries, and ... as part of their power to protect the public health, safety, and other valid interests they have broad power to establish standards for licensing practitioners and regulating the practice of professions.

*Fla. Bar v. Went For It, Inc.,* 515 U.S. 618, 625, 115 S.Ct. 2371, 132 L.Ed.2d 541 (1994) (citations omitted).

### 3. Does the Defendant Demonstrate That the Regulation "Directly Advances" the Asserted Government Interest?

The legislative history of section 651(h)(5)(B) reveals that the intent of the legislation was to assure that the term "board certified" had a designated meaning upon which the medical community and the general public could rely. Senator McCorquodale, who proposed the legislation, stated on the floor of the Senate the objectives of the bill:

> Advertising one's professional specialty has become a common means of promoting one's medical practice in recent years.
>
> While it would seem that a physician's stated credentials would provide assurance to a prospective patient that this physician was trained and qualified to do the procedures stated in the ad, such is

not the case. Doctors who advertise as "board certified" can have authentic credentials, or they may claim credentials from a "bogus board," and the unsuspecting consumer would have a very difficult time differentiating one from the other. A "bogus board" credential can be obtained by mail for a fee, or by taking a weekend course in the subject.

> In order to provide more reliable assurance for the public, I have introduced SB 2036. This bill would require "truth in advertising" regarding a physician's specialty credentials. It would prohibit a physician from stating he or she is "board certified" unless the board certification is a board approved by the American Board of Medical Specialties or a board with equivalent requirements approved by the Medical Board of California. This bill would serve to keep the public from being mislead, and would enhance the quality of care and safety afforded to patients.
>
> SB 2036 is supported by CA Medical Assn., American College of Emergency Physicians, American Society of Maxillofacial Surgeons, CA Society of Anesthesiologists, American Board of Nuclear Medicine, American Board of Medical Specialties, CA Radiological Society, California Society of Plastic Surgeons. I ask for your aye vote.

(Defendant's ER at 128–29).

The adoption of the bill was contested and debated. The record contains a representative sample of the reasons advanced by the proponents of the bill. Donald Langsley, M.D., the Executive Vice–President of the ABMS wrote:

> I write to support the February 16, 1990 Senate Bill 2036 introduced by Senator McCorquodale and in particular, that section on page 4, lines 9 through 19, which state that a physician and surgeon may state that he or she limits practice to specific fields but can only claim to be

certified or eligible for certification by a specialty board if that board is either an ABMS Member Board or one with equivalent requirements approved by the State Medical Licensing Board.

I hope that you will vote "Aye" when the bill is heard in Committee. This bill is important to the health and safety of all citizens. In this country, anyone can start a medical specialty board and there are 110 of them which have not been accepted or approved by the American Board of Medical Specialities or the American Medical Association. In other words, they are totally self-designated. The 23 boards approved by the ABMS and AMA have been authorized on the basis of the fact that they represent a recognized field of medical science and that post M.D. medical education of three to seven years plus passing a rigorous examination is required for certification. Boards which cannot meet these high standards cannot be approved by the ABMS and AMA.

At this time, two-thirds of the nation's 600,000 physicians meet these high qualifications. Unhappily, there are others who claim to be certified when in fact the certification is from one of the self-designated boards or totally lacking. . . .

(Defendant's ER at 148).

Joseph F. Ross, M.D., President of the American Board of Nuclear Medicine, wrote:

As President of the American Board of Nuclear Medicine, one of the 23 recognized certifying boards accredited by the American Board of Medical Specialities and by the American Medical Association, I write to offer firm support for Senator Dan McCorquodale's SB # 2036 (Truth in Advertising Bill). I urge you to vote "aye" on this bill.

I am an emeritus professor of medicine at the UCLA School of Medicine and have worked for 56 years attempting to provide adequate and excellent medical services to patients. At times I have experienced the great embarrassment of having seen patients grossly mismanaged and mishandled by physicians who are not properly qualified and who offer inadequate patient treatment!

It has become apparent that many physicians are attempting to influence prospective patients by indicating that they are "board certified" or "board eligible". I emphasize that the boards which are honest and require of its physicians significant education, training, and evidence of qualifications, are limited to the 23 boards which are recognized by the ABMS and the AMA. It may interest you to know that there are 109 "self-designated boards". Many of these merely require a fee payment and the filing of an application for certification. They in no way insure that the individual who then cites himself as "board qualified" or "board certified" has any competence to do what he is claiming to do. I can assure you that the requirements for the 23 recognized and official certifying boards are the very highest. Although they do not always guarantee that a physician can do everything that he claims, they are still the best indicator that a physician is properly qualified. . . .

(Defendant's ER at 154).

■ The district court noted that:

The report by the Assembly Committee on Health relative to SB 2036 describes the problem that the bill seeks to remedy. The report explains that, "[c]urrently a physician who takes a weekend course can advertise themselves [sic] as 'board certified' in that specialty. There is no quality control, and some patients have been severely hurt. They do not realize that sometimes a framed 'specialty' certification could be the result of two-day course." *See* Weiner Decl.,

Exh. 1 (attached to Mot. for Separate Trial, June 7, 1999).

The report also notes that, "We have approximately a 25–inch stack of articles, references, videos where patients have [been] fooled by a framed diploma/'board certification' and seriously harmed by a physician performing a procedure that they were not certified to do." *Id.*

After considering all the submissions and debates, the California bill was passed and it was signed into law by the governor.[6] It is apparent that in passing the bill the intent was to preserve the meaning of "board certified" by screening the standards of the boards that could issue the certification. The purpose was to enable the medical profession, health services, and the general public to rely on a term that represented a specified degree of postgraduate medical education and experience in evaluating the advertisements of physicians and surgeons. The legislation advances the governmental interest asserted.

**4.** *Is the Restriction More Extensive than Necessary to Serve the Asserted Governmental Interest?*

■ In considering the restriction imposed on commercial speech, we do not require that it be the least restrictive means available. *Fla. Bar*, 515 U.S. at 632, 115 S.Ct. 2371. Rather, what is required is "a reasonable fit between the legislature's ends and the means chosen to accomplish those ends." *Id.* The fit need not be perfect nor the single best to achieve those ends, but one whose scope is narrowly tailored to achieve the legislative objective. *Id.*

In this case, the Plaintiffs contend that the legislature could have chosen to require a "disclaimer," the alternate sugges-

tion in *Peel*, as the least restrictive means. The Court has generally said it is up to the legislature to choose between narrowly tailored means of regulating commercial speech. *Bd. of Trs. v. Fox*, 492 U.S. 469, 479, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989). The legislation at issue in this case does not restrict a physician or surgeon from advertising that he or she had special training or continuing education with a non-qualifying board. Instead, it restricts the use of the term "board certified" to signify certification by boards that meet the statutory qualifications. In the situation of the Academy, a physician or surgeon can advertise his or her membership in the Academy or special education received, but simply cannot use the term "board certified" or its equivalent.

■ The Academy stated the levels of certification it awards in its required application: (1) "Diplomate," which requires a doctorate degree in a related health care field and two years experience working with individuals suffering pain; (2) "Fellow," which requires a masters degree and the same two years of experience; (3) "Clinical Associate," which requires a bachelors degree and five years of such experience. The Defendant acknowledges that a physician or surgeon could advertise that he or she is a Diplomate of the Academy in pain management, but could not use the term "board certified." The California legislation, even if not the least restrictive restriction, is a reasonable fit between the legislature's ends and the means chosen to accomplish those ends.

**C.**

*Are the Statute and its Implementing Regulations Overbroad or Vague?*

Although the Supreme Court has stated that the overbreadth doctrine does not ap-

**6.** The Senate vote was 26 to 4, the record does not reflect the Assembly vote.

ply to regulations of purely commercial speech, *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982), an overbreadth challenge to a statute or regulation that reaches beyond purely commercial speech to encompass fully protected speech is appropriate. *S.O.C., Inc. v. County of Clark*, 152 F.3d 1136, 1143 n. 6 (9th Cir.1998).

The Plaintiffs argue that section 651(h)(5)(B) and its implementing regulations reach fully protected speech. The statute and regulations, however, apply only to commercial speech. Accordingly, the Plaintiffs' overbreadth challenge fails. *See Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 462 n. 20, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978) (stating that the attorney-appellant could not raise a successful overbreadth challenge to a bar rule regulating commercial solicitation); *Bates v. State Bar of Arizona*, 433 U.S. 350, 381, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977) (declining to apply the overbreadth doctrine to a regulation of professional advertising).

■ With regard to vagueness, the statute and regulations are clear that in order to advertise the term "board certified," the certifying organization must qualify by (1) ABMS designation; (2) have standards equivalent to the ABMS; or (3) approval of the board's required postgraduate education by the Accrediting Council for Graduate Medical Education. These standards are well-established and are not vague.

### D.

*Do the Statute and Implementing Regulations Deprive the Academy Members of Their First Amendment Right to Association?*

■ The district court correctly held that the statute and its implementing regulations impinge upon only commercial association. Association that is merely commercial does not implicate any fundamental right and, thus, is subject only to rational basis review. *Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1050–51 (9th Cir.2000) (upholding a state licensing scheme for mental health professional); *see Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978) (upholding a state bar rule regulating an attorney's in-person solicitation of clients for commercial gain). The statute and regulations clearly survive rational basis review because they rationally promote a legitimate state interest. *See Cal. Bd. of Psychology*, 228 F.3d at 1051 (rational basis requires a court to determine only whether the regulation at issue has a "conceivable basis").

### E.

*Due Process Claim.*

The due process claim concerns the manner in which the Medical Board of California considered the application of the Academy. The Plaintiffs acknowledge that:

> Article III § 3.5 of the California Constitution prohibits the Medical Board from considering Constitutional objections to a statute or a regulation. The essence of the Plaintiffs' case is based on the Constitutional objection that the statute and regulation are unconstitutional. These objections were never considered.

(Plaintiffs' Brief at 35.) They then make the peculiar argument that "[t]he administrative remedy did not include consideration of Constitutional objections." The district court noted that the Plaintiffs had the opportunity to seek mandamus from the California court system, where the constitutional arguments could have been addressed.

In any event, the constitutional arguments have been fully addressed by the district court and this court. The only issue before the Medical Board of California was whether the Academy had met the requirements for certification equivalent to the ABMS. The Academy had full opportunity to present its written application and supporting documents for a ruling on equivalency. The Plaintiffs present no authority that they were entitled to a oral hearing. More importantly, the Academy presented no evidence to the district court that raised a genuine issue of material fact from which a finder of fact could reasonably find that it met the equivalency standard. Therefore, a summary judgment on that issue was properly granted. The facts presented to the district court left no doubt that the Academy did not meet the statutory standards to qualify as a board whose certification would justify a physician or surgeon in advertising that he or she is "board certified." As the Plaintiffs state in their brief," The essence of the Plaintiffs' case is based on the Constitutional objection that the statute and regulation are unconstitutional."

Any defect that may have existed in the proceedings before the Medical Board of California is harmless because the Plaintiffs have presented no evidence that the Academy met the statutory standards. There is no merit to the due process claim.

The Plaintiffs raise one other argument that we may quickly dispose of, which is that the statute amounts to a prior restraint. The statute does not prevent the Plaintiffs from advertising that they are "board certified." Rather, there are certain penalties and adverse administrative actions if they do so when not authorized by the statute. This is not a prior restraint.

## III.

### CONCLUSION.

The State of California, in regulating the advertising of the physician's and surgeon's profession, sought to give a consistent meaning to the term "board certified," as representing particular standards of postgraduate study. Such consistent usage informs the medical community and the general public that the physicians and surgeons advertising that they are "board certified" have met a certain standard of postgraduate education and experience. Physicians and surgeons are not precluded from advertising that they limit their practice to certain fields or that they are members of, or have had special education from, non-qualified boards or associations. The screening process adopted by California is constitutional. We find no merit in the Plaintiffs' other claims.

The judgment of the district court is AFFIRMED.

### ADDENDUM "A"

(B) A physician and surgeon licensed under Chapter 5 (commencing with Section 2000) by the Medical Board of California may include a statement that he or she limits his or her practice to specific fields, but shall not include a statement that he or she is certified or eligible for certification by a private or public board or parent association, including, but not limited to, a multidisciplinary board or association, unless that board or association is (i) an American Board of Medical Specialties member board, (ii) a board or association with equivalent requirements approved by that physician and surgeon's licensing board, or (iii) a board or association with an Accreditation Council for Graduate Medical Education approved postgraduate training program that provides complete training in that specialty or subspecialty.

A physician and surgeon licensed under Chapter 5 (commencing with Section 2000) by the Medical Board of California who is certified by an organization other than a board or association referred to in clause (i), (ii), or (iii) shall not use the term "board certified" in reference to that certification, unless the physician and surgeon is also licensed under Chapter 4(commencing with Section 1600) and the use of the term "board certified" in reference to that certification is in accordance with subparagraph (A). A physician and surgeon licensed under Chapter 5 (commencing with Section 2000) by the Medical Board of California who is certified by a board or association referred to in clause (i), (ii), or (iii) shall not use the term "board certified" unless the full name of the certifying board is also used and given comparable prominence with the term "board certified" in the statement.

For purposes of this subparagraph, a "multidisciplinary board or association" means an educational certifying body that has a psychometrically valid testing process, as determined by the Medical Board of California, for certifying medical doctors and other health care professionals that is based on the applicant's education, training, and experience.

For purposes of the term "board certified," as used in this subparagraph, the terms "board" and "association" mean an organization that is an American Board of Medical Specialities member board, an organization with equivalent requirements approved by a physician and surgeon's licensing board, or an organization with an Accreditation Council for Graduate Medical Education approved postgraduate training program that provides complete training in a speciality or subspecialty.

The Medical Board of California shall adopt regulations to establish and collect a reasonable fee from each board or association applying for recognition pursuant to this subparagraph. The fee shall not exceed the cost of administering this subparagraph. Notwithstanding Section 2 of Chapter 1660 of the Statutes of 1990, this subparagraph shall become operative July 1, 1993. However, an administrative agency or accrediting organization may take any action contemplated by this subparagraph relating to the establishment or approval of specialist requirements on and after January 1, 1991.

(Chapter 5 relates to the licensing of physicians and surgeons. Chapter 4 relates to the licensing of dentists).