[No. C054718. Third Dist. Apr. 28, 2008.]

AMERICAN BOARD OF COSMETIC SURGERY, Plaintiff and Respondent, v.
MEDICAL BOARD OF CALIFORNIA et al., Defendants and Appellants.

536

## COUNSEL

Edmund G. Brown, Jr., Attorney General, Carlos Ramirez, Assistant Attorney General, Jose Guerrero, Kerry Weisel and Jane Zack Simon, Deputy Attorneys General, for Defendants and Appellants.

Haight, Brown & Bonesteel, Rita Gunasekaran, J. Alan Warfield; Johnson & Bell and William K. McVisk for American Board of Medical Specialties as Amicus Curiae on behalf of Defendants and Appellants.

Kessenick Phillips & Gamma and Douglas Scott Free for California Society of Plastic Surgeons as Amicus Curiae on behalf of Defendants and Appellants.

Seyfarth Shaw, Kurt A. Kappes and Robert B. Milligan for American Society of Plastic Surgeons as Amicus Curiae on behalf of Defendants and Appellants.

Nossaman, Guthner, Knox & Elliott, Robert J. Sullivan, John T. Kennedy; Gaido & Fintzen, Peter A. Gaido and Scott Fintzen for Plaintiff and Respondent.

## OPINION

**BLEASE, Acting P. J.**—This case involves an 11-year effort by petitioner, the American Board of Cosmetic Surgery (ABCS), to gain specialty board approval by respondent, the Medical Board of California (Medical Board), so that physicians certified by the ABCS may advertise themselves as board certified in "Cosmetic Surgery," defined as a subspecialty of medicine and surgery, in one of three areas. Those areas are general cosmetic surgery, facial cosmetic surgery and dermatologic cosmetic surgery. A subspecialty board is a subcategory of a recognized board.

The Medical Board's authority derives from the advertising provisions of the Business and Professions Code. Business and Professions Code section 651[1] proscribes false and misleading advertising by health care practitioners licensed by the state. Subdivision (h)(5)(B) of section 651 prohibits physicians and surgeons from representing that they are "board certified" unless the certifying organization (1) is a member board of the American Board of Medical Specialties (ABMS), (2) has requirements *equivalent* to those of an

---

[1] All further section references are to the Business and Professions Code unless otherwise specified.

ABMS member board as determined by the Medical Board,[2] or (3) has completed a postgraduate training program in a specialty or subspecialty that is approved by the Accreditation Council for Graduate Medical Education (ACGME). The ABMS has accredited a specialty in surgery and a subspecialty in plastic surgery.

The ABCS is not an ABMS member board and does not have an ACGME training program, so it applied to the Medical Board for equivalency approval under section 651, subdivision (h)(5)(B)(ii). Under the Medical Board regulations equivalency is measured by the "scope, content and duration" of training required of a related specialty or subspecialty area of an ABMS member board. (Cal. Code Regs., tit. 16, § 1363.5.)

The Medical Board's Division of Licensing is authorized by the Medical Board to make the equivalency determination and to approve or disapprove the specialty board's application.[3] The Division of Licensing denied the petitioner's application after determining that ABCS's requirements for board certification were not equivalent to those of an ABMS member board. The denial was based in part on the fact that certification for dermatologic cosmetic surgery does not require general surgery training.

ABCS filed a petition for writ of mandate. (Code Civ. Proc., § 1085.) Ordinary mandamus may be used to compel the performance of a duty that is purely ministerial in nature or to correct an abuse of discretion. The trial court found ABCS had presented substantial evidence of equivalency, granted the petition, and entered a judgment ordering the Medical Board to approve ABCS's application. The Medical Board appeals from the judgment contending the trial court applied the wrong standard of review and abused its discretion by granting the petition. We agree.

When reviewing an exercise of discretion, our scope of review is limited out of deference to the agency's authority and expertise. We may not reweigh the evidence or substitute our judgment for that of the agency. Since the record reflects the reasons for the Medical Board's decision, the reasons are rationally related to the regulatory requirements and are supported by ample evidence, we shall conclude the Medical Board did not abuse its discretion by denying ABCS's application.

We shall reverse the judgment.

---

[2] The Medical Board includes the Division of Medical Quality and the Division of Licensing. (§ 2002.)

[3] Since the action of the Division of Licensing is the action of the Medical Board, we shall refer to the Medical Board as making the decision where appropriate.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.  *Statutory and Regulatory Overview*

█    Section 651, subdivision (h)(5)(A) specifies the allowable information a health care practitioner may include in advertising his or her qualifications. Section 651, subdivision (h)(5)(B) prohibits a representation that a health care practitioner is certified by a private or public board unless the board is "(i) an [ABMS] member board, (ii) a board . . . with equivalent requirements approved by . . . [the Medical Board], or (iii) a board . . . with an [ACGME] approved postgraduate training program that provides complete training in that specialty or subspecialty."[4]

---

[4] Section 651, subdivision (h)(5)(B) provides: "A physician and surgeon licensed under Chapter 5 (commencing with Section 2000) by the Medical Board of California may include a statement that he or she limits his or her practice to specific fields, but shall not include a statement that he or she is certified or eligible for certification by a private or public board or parent association, including, but not limited to, a multidisciplinary board or association, unless that board or association is (i) an American Board of Medical Specialties member board, (ii) a board or association with equivalent requirements approved by that physician and surgeon's licensing board, or (iii) a board or association with an Accreditation Council for Graduate Medical Education approved postgraduate training program that provides complete training in that specialty or subspecialty. A physician and surgeon licensed under Chapter 5 (commencing with Section 2000) by the Medical Board of California who is certified by an organization other than a board or association referred to in clause (i), (ii), or (iii) shall not use the term 'board certified' in reference to that certification, unless the physician and surgeon is also licensed under Chapter 4 (commencing with Section 1600) and the use of the term 'board certified' in reference to that certification is in accordance with subparagraph (A). A physician and surgeon licensed under Chapter 5 (commencing with Section 2000) by the Medical Board of California who is certified by a board or association referred to in clause (i), (ii), or (iii) shall not use the term 'board certified' unless the full name of the certifying board is also used and given comparable prominence with the term 'board certified' in the statement.

"For purposes of this subparagraph, a 'multidisciplinary board or association' means an educational certifying body that has a psychometrically valid testing process, as determined by the Medical Board of California, for certifying medical doctors and other health care professionals that is based on the applicant's education, training, and experience.

"For purposes of the term 'board certified,' as used in this subparagraph, the terms 'board' and 'association' mean an organization that is an American Board of Medical Specialties member board, an organization with equivalent requirements approved by a physician and surgeon's licensing board, or an organization with an Accreditation Council for Graduate Medical Education approved postgraduate training program that provides complete training in a specialty or subspecialty.

"The Medical Board of California shall adopt regulations to establish and collect a reasonable fee from each board or association applying for recognition pursuant to this subparagraph. The fee shall not exceed the cost of administering this subparagraph. Notwithstanding Section 2 of Chapter 1660 of the Statutes of 1990, this subparagraph shall become operative July 1, 1993. However, an administrative agency or accrediting organization may take any action contemplated by this subparagraph relating to the establishment or approval of specialist requirements on and after January 1, 1991."

A licensed physician or surgeon certified by an organization, other than a board, in one of these three categories is prohibited from using "the term 'board certified' in reference to that certification," unless he or she is licensed under chapter 4, of division 2 of the Business and Professions Code. (§ 651, subd. (h)(5)(B).)[5]

A violation of this provision is a misdemeanor punishable by up to six months in county jail and a fine of up to $2,500, an administrative fine of up to $10,000 per event, and possible revocation or suspension of the violator's license. (§§ 651, subds. (f), (g), (k), 652, 652.5.)

■ Section 651 authorizes the Medical Board to adopt regulations to administer its provisions. (See Stats. 1990, ch. 1660, § 2, p. 7919.) Those regulations, contained in California Code of Regulations, title 16, section 1363.5, specify the requirements for certification approval, the procedures governing applications for equivalency determination, and the criteria for determining ABMS member board equivalency, the details of which will be set forth in the Discussion. (Cal. Code Regs., tit. 16, § 1363.5, subds. (c), (d) (hereafter § 1363.5).) The Medical Board's Division of Licensing (Division) is authorized to make the equivalency determination and to approve or disapprove the specialty board's application. (§ 1363.5, subds. (b), (c).)

After a specialty board files its application and it is found complete, Division staff conduct a review of the application to determine whether it fulfills the more pedestrian requirements, which we set forth in the discussion portion of the opinion. However, the staff does not have the expertise to evaluate the quality or appropriateness of specialty medical education programs. For that reason the Division hires a medical consultant with expertise and experience in academic medicine. The consultant is usually an emeritus professor from a California medical school who has served as a department chair or ACGME program director.

The matter is then scheduled for a public vote at a regularly scheduled Division meeting. Division members are given the application package along with a summary of the staff report, which indicates whether or not the applicant meets all of the objective legal requirements of the regulations. They also are given the medical consultant's report, which includes his or her opinion about the applicant's training, standards, and certification requirements. The applicant is notified of the hearing and may have its representatives appear to present further information and answer the members' questions. The members then vote to approve or disapprove the application

---

[5] Division 2, chapter 4 provides for licensing of "dentistry" and the statute requires similar requirements for a dentist unless the accrediting organization is recognized by the Dental Board of California. (§ 651, subd. (h)(5)(A)(i)–(iv).)

and the applicant is given written notification of the Division's decision. (§ 1363.5, subd. (c)(3).)

## B. *ABMS Board Certification*

The ABMS is a private umbrella organization comprised of 24 approved medical specialty member boards, which sets the level of training its member boards must require for medical board certification by that member board.

The term "board certification" by an ABMS member board has become a term of art signifying the gold standard in the achievement of medical skill and proficiency. (*American Academy of Pain Management v. Joseph* (9th Cir. 2004) 353 F.3d 1099, 1104–1105.) The Supreme Court recognized this specialized meaning in *Peel v. Attorney Disciplinary Comm'n of Ill.* (1990) 496 U.S. 91, 102, fn. 11 [110 L.Ed.2d 83, 96, 110 S.Ct. 2281]), where it found that "[b]oard certification of specialists in various branches of medicine . . . is based on various requirements of education, residency, examinations and evaluations. [Citation.] The average member of the public does not know or necessarily understand these requirements, but board certification nevertheless has 'come to be regarded as evidence of the skill and proficiency of those to whom they [have] been issued.' "

The term "board certification" has also been recognized by national health accreditation organizations (see *American Academy of Pain Management v. Joseph, supra*, 353 F.3d at p. 1105), the California Legislature (§ 651, subd. (h)(5)(B)), and the State Department of Health Care Services, which requires ABMS board certification in its various hospital licensing regulations. (See Cal. Code Regs., tit. 22, §§ 70205, 70225, 70405, 70245, 70435, 70445.)

## C. *ABCS's Application*

ABCS is a private nonprofit organization incorporated under the laws of the Commonwealth of Pennsylvania. It is not an ABMS member board, it does not represent an ABMS recognized specialty or subspecialty, nor does it have a postgraduate training program approved by the ACGME.[6]

In June 2003, ABCS submitted its second application to the Division for approval as an equivalent specialty board under section 651, subdivision (h)(5)(B)(ii).[7]

---

[6] According to ABCS, it chose not to apply for ABMS recognition because ABMS recognizes only one certifying board in each specialty and that board is plastic surgery.

[7] In 1996, ABCS filed its first application for recognition as a specialty board, which was denied in 1997.

ABCS defines "Cosmetic Surgery" as a subspecialty of medicine and surgery that restricts itself to the enhancement of appearance through elective surgical and medical techniques. It describes itself as "specifically concerned with maintaining normal appearance, restoring it, or enhancing it beyond the average level toward some aesthetic ideal. Cosmetic Surgery is a multi disciplinary and comprehensive approach directed to all areas of the head, neck and body."

ABCS offers certification in three distinct areas: (1) general cosmetic surgery, (2) facial cosmetic surgery, and (3) dermatologic cosmetic surgery. ABCS's certification requirements define and limit the procedures encompassed by each of these three certification areas. Included among those requirements in one of these areas is (1) proof of prior board certification by an ABMS member board or other approved board in one of the following six areas: plastic and reconstructive surgery, otolaryngology, general surgery, ophthalmology with completion of oculoplastic fellowship, dermatology, or oral and maxillofacial surgery with an M.D. degree and (2) successful completion of a six-hour written examination covering general knowledge of cosmetic surgical procedures and an eight-hour oral examination in the area of certification sought.

The candidate must also complete a postresidency fellowship specific to ABCS's separate areas of certification in a fellowship program that has been approved by the American Academy of Cosmetic Surgery (the Academy). The requirements vary depending upon the candidate's elected area of ABCS certification and his or her prior area of ABMS certification. Within those parameters, ABCS's additional postresidency surgical training requirements may be met in most instances by one additional year of training. Significantly, the fellowship programs in dermatologic cosmetic surgery do not require general surgery training while the programs in general cosmetic surgery and facial cosmetic surgery do.[8]

## D. *The Division Hearing and Medical Consultant Review*

The Division accepted ABCS's application for filing and referred it to a medical consultant for review. The consultant, Dr. Ronald Tompkins, prepared two reports in connection with his review of ABCS's application.

---

[8] An applicant who is an ABMS board certified dermatologist must complete the following additional training: to obtain an ABCS certificate in dermatologic cosmetic surgery, the applicant must complete a one-year dermatologic cosmetic surgery fellowship; to obtain an ABCS certificate in facial cosmetic surgery, the applicant must complete a two-year general surgery residency and a two-year general cosmetic surgery fellowship; to obtain an ABCS certificate in general cosmetic surgery, the applicant must complete a two-year general surgery residency and a two-year general cosmetic surgery fellowship.

In the first report, Dr. Tompkins found, inter alia, that ABCS's training requirements were not equivalent to an ABMS board member because (1) the duration of each type of fellowship is set at one year, (2) the quality and scope of the training in the fellowship programs varied and differed due to the fact there are three separate training programs, each aimed at one of the three certificates,[9] and (3) the scope of the training was "quite varied among the three program types . . . ."

According to Dr. Tompkins, "[i]t is difficult to compare the scope of the General Cosmetic program to that of the Dermatologic Cosmetic program; they are not equivalent and their aims are different. Each of the three types of programs is designed to train fellows in specific, sometimes narrow, areas for their future practice. . . . [¶] For these reasons, the content of each of the programs needs to be looked at separately." For example, while the general cosmetic surgeon needs to have a broad experience, the dermatologic cosmetic physician is required to have experience in a much more limited number of procedures.[10]

Additionally, Dr. Tompkins found it "difficult to judge equivalency to a related ABMS board" due to "the wide variation in training requirements for the three types of fellowships," and indicated he was not aware of an ABMS board which offers a certificate for three such different levels of training.

Dr. Tompkins also found the ABCS's training requirements were not equivalent to the American Board of Facial Plastic and Reconstructive Surgery (ABFPRS), a non-ABMS board that the Division had recently approved as a subspecialty board after finding its training requirements were equivalent to those required by the ABMS member boards in otolaryngology/head-and-neck surgery or plastic surgery. He noted that all candidates for the ABFPRS certificate must have completed a residency program in either otolaryngology/head-and-neck surgery or plastic surgery and earned certification in one of these two surgical specialties by an ABMS or Canadian board.[11]

---

[9] According to Dr. Tompkins, the general cosmetic surgery program requires 132 procedures in 15 different areas; the facial cosmetic surgery program requires 92 procedures in 12 different areas, and the dermatologic cosmetic surgery program requires 45 procedures in four different areas.

[10] The curriculum for the dermatologic cosmetic surgery certificate includes laser resurfacing, dermabrasion, chemical peels, liposuction of the face, body, and extremities, soft tissue augmentation, and hair loss treatment.

[11] Since the regulations were adopted, the Division has approved four equivalency applications and disapproved two such applications. The four that were approved include the ABFPRS, the American Board of Pain Medicine, the American Board of Sleep Medicine, and the American Board of Spine Surgery. Two of these boards are in subspecialties recognized by

By contrast, ABCS's "prior training requirements are much broader, less well-defined and not confined to prior training in surgical specialties. Fellowship programs in Dermatologic Cosmetic Surgery do not require general surgery training as the programs in General and Facial Cosmetic Surgery do . . . and the ABMS Board of Dermatology requires no surgical training of their diplomats . . . . *This means that the only [personal] surgical experience a Dermatologic Cosmetic surgeon may have is that obtained in the rather limited one year training program.*" (Italics added.)[12]

Dr. Tompkins expressed concern that because the ABMS certificate states boldly that the diplomat is certified in cosmetic surgery, it falsely implies that the same training and evaluation is applicable to all candidates. The general public may logically assume a certificate stating the person is a certified "__ Surgeon" means that individual has had some broader surgical experience. Giving the same certificate, albeit qualified, to a dermatologic cosmetic surgeon as the one given to a general cosmetic surgeon may therefore be misleading to the public.[13]

In conclusion, Dr. Tompkins stated that because of the wide variations in the prerequisites for and the scope and content of ABCS's training programs, "it is not possible . . . to assign equivalency to an ABMS board or to a non-ABMS board approved in California." Dr. Tompkins filed a second report in rebuttal to ABCS's expert, which effectively affirmed the findings and conclusions contained in the first report.

The matter was heard at two public hearings where the Division heard testimony from ABCS's medical experts and from Dr. Tompkins and representatives of the American Society of Plastic Surgeons. At the first hearing, Mr. Giedel, an attorney representing ABCS, told the Division that plastic surgery and cosmetic surgery are unrelated, that a board certified plastic surgeon may never do many of the cosmetic procedures performed by

---

the ABMS, namely pain medicine and sleep medicine. The other two are in areas that combine ABMS recognized subspecialties.

[12] At oral argument, ABCS asserted that its training requirements for dermatologists includes general surgery. This statement is misleading and misses the point. ABCS recognizes that dermatology is a nonsurgical ABMS specialty. It therefore requires that a board certified dermatologist who desires to become certified in facial or general cosmetic surgery must complete two years of a ACGME approved general surgery residency training and an additional two years of an Academy approved cosmetic surgery fellowship in the area of certification sought. By contrast, a board certified dermatologist who seeks certification in ABCS's dermatologic program must only complete one additional year of surgical training.

[13] Section 651, subdivision (h)(5)(B) requires that the full name of the certifying board be given "comparable prominence with the term 'board certified' in the statement." ABCS's certificate states the individual area of certification (general, facial, or dermatologic cosmetic surgery). However, that designation is printed in considerably smaller and less prominent type than the full name of the board.

cosmetic surgeons, and that ABCS is the only board certifying physicians and surgeons in the area of cosmetic surgery. Drs. Zachary and Barker informed the Division that they disagreed with Dr. Tompkins's report primarily because he did not give adequate weight to the training received by board certified dermatologists.

At the conclusion of the second hearing, the Division members who were present voted unanimously to deny ABCS's application. Before voting, several division members expressed concern with the amount of training required to receive the dermatological certificate and questioned whether the public would be confused by an ABCS certificate because it is given in three separate areas with very different requirements and limitations. The Division notified ABCS by letter of its decision to deny the application.

E. *Petition for Writ of Mandate*

ABCS filed a petition for writ of mandate June 27, 2006, seeking issuance of a writ of mandate directing the Medical Board to grant its application for specialty board equivalency or in the alternative, a statement of issues and an order directing that an administrative hearing be held in compliance with the Administrative Procedure Act.

The trial court granted the petition and issued a peremptory writ of mandamus ordering the Medical Board to grant ABCS's application within 65 days of service of notice of entry of judgment. In its statement of decision, the trial court concluded that the Medical Board acted arbitrarily and capriciously in denying the application because ABCS produced substantial evidence establishing that it met or exceeded all of the regulatory requirements and that the Medical Board failed to establish any substantial evidence to the contrary.

The Medical Board appeals from the judgment.

## DISCUSSION

The Medical Board contends the trial court improperly substituted its judgment for that of the Medical Board by making its own determination of equivalency and argues that there is no basis for granting the petition because the evidence supports its conclusion that ABCS did not meet the regulatory requirements.

Citing extensively to the record, ABCS argues that the Medical Board is mandated to grant its application because there is substantial evidence to prove it has met all of the regulatory requirements. It further argues that the Medical Board has failed to establish that it did not meet any regulatory requirement.

We agree with the Medical Board. Like the trial court, ABCS misperceives the standard of proof, the nature of the Medical Board's decision, and the standard of review. Because the determination of subspecialty board equivalency is a discretionary act requiring medical expertise and the Medical Board's decision is not devoid of evidentiary support, we find no abuse of discretion.

A. *Standard of Review*

ABCS filed a petition for a writ of ordinary mandamus (Code Civ. Proc., § 1085; *McGill v. Regents of University of California* (1996) 44 Cal.App.4th 1776, 1785 [52 Cal.Rptr.2d 466]),[14] which is used to review adjudicatory decisions where as here the agency is not required to hold an evidentiary hearing. (*Bunnett v. Regents of University of California* (1995) 35 Cal.App.4th 843, 848 [41 Cal.Rptr.2d 567].)[15]

Ordinary mandamus may be used to compel the performance of a duty that is purely ministerial in nature (*Terminal Plaza Corp. v. City and County of San Francisco* (1986) 186 Cal.App.3d 814, 830 [230 Cal.Rptr. 875]) or to correct an abuse of discretion (*Gordon v. Horsley* (2001) 86 Cal.App.4th 336, 350–351 [102 Cal.Rptr.2d 910]). When reviewing the exercise of discretion, "[t]he scope of review is limited, out of deference to the agency's authority and presumed expertise: 'The court may not reweigh the evidence or substitute its judgment for that of the agency. [Citation.]' " (*Stone v. Regents of University of California* (1999) 77 Cal.App.4th 736, 745 [92 Cal.Rptr.2d 94].) "In general . . . the inquiry is limited to whether the decision was arbitrary, capricious, or entirely lacking in evidentiary support . . . ." (*McGill v. Regents of University of California, supra*, 44 Cal.App.4th at p. 1786, quoting *Bunnett v. Regents of University of California, supra*, 35 Cal.App.4th at p. 849.) When making that inquiry, the " ' "court must ensure that an agency has adequately considered all relevant factors, and has demonstrated a

[14] By contrast, when an agency is required to hold an evidentiary hearing, the agency's quasi-judicial acts are reviewed by administrative mandate. (Code Civ. Proc., § 1094.5; *Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 566–567 [38 Cal.Rptr.2d 139, 888 P.2d 1268].)

[15] Neither section 651 nor the regulatory scheme require an evidentiary hearing to be held prior to or after the Division makes its decision to deny a specialty board equivalency application. (§ 1363.5.)

rational connection between those factors, the choice made, and the purposes of the enabling statute." [Citation.]' " (*Stone v. Regents of University of California, supra,* 77 Cal.App.4th at p. 745.)[16]

Because both the trial court and the appellate court apply the same standard of review, on appeal we review the agency's action de novo. (*Stone v. Regents of University of California, supra,* 77 Cal.App.4th at p. 745; *Ridgecrest Charter School v. Sierra Sands Unified School Dist.* (2005) 130 Cal.App.4th 986 [30 Cal.Rptr.3d 648].)

### B. *Abuse of Discretion*

Ignoring the portions of the record that support the Medical Board's decision, ABCS argues that the Medical Board was required to approve its application because it met all of the regulatory requirements and therefore the Medical Board's duty was mandatory rather than discretionary. We disagree.

■ Section 1363.5, subdivision (c)(1) provides in pertinent part that "[u]pon request the Division of Licensing will approve a specialty board if it meets the criteria set forth in these regulations." To gain approval, the regulations set forth 12 detailed requirements. (§ 1363.5, subd. (b)(1)–(12).) Some of the requirements may be met and assessed in a perfunctory manner, such as the determination whether the board certifies professionals other than physicians, whether it is a nonprofit corporation or association with at least 100 members located in at least one-third of the states who have a clear and unrestricted medical license, whether it has articles of incorporation, a constitution, and bylaws, and the source of its revenue. (See § 1363.5, subd. (b)(3)–(7).)

However, the assessment whether the applicant has met the training equivalency requirement may not be so easily determined because it requires a great deal of medical expertise and necessarily involves the exercise of discretion. (§ 1363.5, subd. (b)(8).)

■ The regulations set forth three methods for determining equivalency. (§ 1363.5, subd. (b)(8).) Where as here the specialty board's postgraduate training program is other than an ACGME or RCPSC (Royal College of Physicians and Surgeons of Canada) accredited postgraduate program, section 1363.5, subdivision (b)(8)(B) requires that "the specialty board shall have training standards that include identifiable training in the specialty or subspecialty area of medicine in which the physician is seeking certi-

---

[16] By contrast, when review is sought by means of administrative mandamus (Code Civ. Proc., § 1094.5), the inquiry is whether substantial evidence supports the administrative decision. (*McGill v. Regents of University of California, supra,* 44 Cal.App.4th 1776.)

fication and *that have been determined by the Division . . .* to be equivalent in scope, content and duration to those of an ACGME or RCPSC [Royal College of Physicians and Surgeons of Canada] accredited program in a related specialty or subspecialty area of medicine. This training shall be evaluated by the Division . . . *to ensure that its scope, content and duration are equivalent to those of an ACGME or RCPSC accredited program and are adequate for training in that specialty or subspecialty area of medicine in order to protect the public health and safety.*" (Italics added.)

Although section 651 does not define the term "equivalent," the regulations define it by the criteria of scope, content and duration of the training of an ACGME or RCPSC accredited program in a related specialty or subspecialty area of medicine. (§ 1363.5, subd. (b)(8)(B).) The parties agree that in using the term "equivalent," the Legislature did not intend that the applicant's training program be identical to that of an ACGME or RCPSC accredited program, but rather that it be of equal value when measured by the stated criteria. We agree.

When determining equivalency, the initial question must always be, equivalent to what. At oral argument, ABCS asserted that the statute requires equivalency to be determined by comparing its training requirements to the *general* standards of training set by the ABMS. We disagree.

First, generalized training standards would be meaningless and unworkable and ABCS did not provide the trial court or this court with any such standards. Secondly, ABCS's interpretation does not comport with the statutory or regulatory language. Section 651, subdivision (h)(5)(B) requires that the specialty or subspecialty board be "(i) an American Board of Medical Specialties *member board*, [or] (ii) a board or association with equivalent requirements approved by that physician and surgeon's licensing board . . . ." (Italics added.) Because equivalency under method (ii) is to be determined in connection with method (i), the measure of equivalency is not based upon generalized standards set by the ABMS but rather by those set by an ABMS member board. Indeed, in its petition for rehearing, ABCS acknowledged that an ACGME or RCPSC accredited postgraduate program is "an ABMS requirement." Unless the ACGME or RCPSC accredited postgraduate training program required for subspecialty certification by an ABMS member board is used to determine equivalency, the Division's medical expert is essentially tasked with the responsibility of determing and setting accreditation requirements. Needless to say, that task is well beyond the expertise and scope of a single medical expert hired to determine equivalency under section 651, subdivision (h)(5)(B)(ii).

This construction is also consistent with the regulations, which require that equivalency be determined by comparing the training program of the applicant with that of "an ACGME or RCPSC accredited program in a *related* specialty or subspecialty area of medicine." (§ 1363.5, subd. (b)(8)(B), italics added.)

Under either construction however, since the comparison is made between specialties or subspecialties that are not identical, the training programs would necessarily differ, requiring the Division to make a quantitative and qualitative assessment.

In making that assessment, Dr. Tompkins considered ABCS's application and supporting documentation (seven volumes), made site visits to the headquarters of the Academy and the ABCS in Illinois, selected and visited two general cosmetic surgery programs,[17] reviewed confidential written and oral examination questions, and considered additional information as he deemed necessary. He also considered a report by Dr. Barker, which was prepared in support of ABCS.

We have previously detailed Dr. Tompkins's findings and need not repeat those findings at length. Suffice it to say, he found the surgical training in the dermatologic area "rather limited" and concluded variations in the prerequisites and the scope and content of the training programs for the three certificates made it impossible for him "to assign equivalency to an ABMS board or to a non-ABMS board approved in California."

■ At oral argument, ABCS asserted that Dr. Tompkins admitted in a supplemental letter that he did not know whether its training requirements were equivalent and deferred to the Medical Board's expertise. This is true, but of no legal consequence because ABCS seeks a determination of equivalency under section 1363.5, subdivision (b)(8)(B). That subparagraph of the regulation requires that the specialty board have training standards "that *have been determined* by the Division . . . to be equivalent in scope, content and duration to those of an ACGME or RCPSC accredited program . . . ." (Italics added.) Using this method for specialty board approval, the Division must make an affirmative finding of equivalency. If it is unable to do so, the specialty or subspecialty board has failed to meet this criteria.[18]

---

[17] As the ABMS points out in its amicus curiae brief, ABCS offered no evidence that its remaining programs are equal in quality to the two programs visited by Dr. Tompkins.

[18] By contrast, where a specialty board requires all applicants to complete a postgraduate training program accredited by the ACGME or the RCPSC that includes identifiable training in the specialty or subspecialty area, the identifiable training is *deemed acceptable unless* determined by the Division to be either inadequate in scope, content and duration in that

■ In denying ABCS's application, the Division considered ABCS's voluminous materials, Dr. Tompkins's reports, and the testimony from two public hearings attended by members of the medical community representing both sides. Several physician witnesses and Division members alike expressed the same concerns expressed by Dr. Tompkins that ABCS's certification would mislead the public because the same certificate is given for three separate subspecialty areas despite the fact there is a significant disparity in the surgical training and surgical procedures required for those three areas. This information was more than sufficient to support the Medical Board's determination that the ABCS's certification requirements were not equivalent to those of an ACGME or RCPSC accredited program in a related specialty or subspecialty area of medicine. It was therefore obligated to deny ABCS's application.

This court does not have the medical expertise to second-guess the Medical Board's decision. Because the record reflects the reasons for the Medical Board's decision, those reasons are rationally related to the regulatory requirements, and they are supported by ample evidence, we conclude the Medical Board did not abuse its discretion by denying ABCS's application.

## DISPOSITION

The judgment is reversed and the trial court is directed to enter a new judgment denying the petition. The Medical Board is entitled to its costs on appeal. (Cal. Rules of Court, rule 8.276(a)(1).)

Sims, J., and Hull, J., concurred.

A petition for a rehearing was denied May 23, 2008, and the opinion was modified to read as printed above.

---

specialty or subspecialty or not equivalent in scope and content to the residency training requirement for board certification by any related ABMS board. (§ 1363.5, subd. (b)(8)(A).)