Filed 6/20/22  Connected Morro Bay Blvd. v. City of Morro Bay CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| CONNECTED MORRO BAY BLVD., LLC,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CITY OF MORRO BAY et al.,<br><br>    Defendants and Respondents. | 2d Civil No. B312102<br>(Super. Ct. No. 19CV-0479)<br>(San Luis Obispo County) |

Connected Morro Bay Blvd., LLC, appeals from the judgment denying its petition for a writ of mandate and complaint for injunctive relief.  Respondent City of Morro Bay (City) denied appellant's application for a permit to operate a retail cannabis dispensary.  It issued permits to two other applicants.  Appellant sought an order requiring City to revoke the issued permits and grant its application for a permit. Appellant contends that City officials exercised unauthorized discretion in permitting the successful applicants to change the location of their dispensaries.  We affirm.

*Ordinance No. 612*

Ordinance No. 612 (the ordinance) authorizes City to issue permits to operate commercial cannabis operations. It was enacted by the City Council in 2017. The ordinance added chapter 5.50 to Title 5 of the Morro Bay Municipal Code (MBMC). Chapter 5.50 is "known as the 'Commercial Cannabis Operations Regulatory Program.'" (MBMC, § 5.50.010D.)

MBMC section 5.50.060B provides: "Issuance of a commercial cannabis operation permit is governed by a three-step procedure . . . . [¶] 1. The first step . . . is a review by the Director [the City of Morro Bay Community Development Director] to determine whether an applicant meets the minimum qualifications for a commercial cannabis operation permit, such minimum qualifications being the requirements of this chapter [chapter 5.50], the Morro Bay City Code, and applicable state law. If the director makes a positive determination, then the application will be deemed compliant, and eligible for review by the cannabis permit committee as to whether the permit should issue. [¶] 2. The second step . . . is a review by the cannabis permit committee of the thoroughness of applicant's adherence to merit list criteria specified in Section 5.50.090(C). Upon conclusion of this review, the cannabis permit committee shall make a recommendation to the city manager as to whether or not a permit should be issued. The recommendation shall articulate in writing reasons for the recommendation and refer to merit list criteria. [¶] 3. The third step . . . is review by city manager of cannabis permit committee recommendations, and then a decision on whether a permit will or will not be issued. The reasons for the decision shall be articulated in writing and refer

to merit list criteria specified in Section 5.50.090(C).  The decision shall be final and non-appealable."

MBMC section 5.50.120D provides, "No more than two permits shall be active and valid in the city at any one time."

*Factual and Procedural Background*

Appellant was one of seven applicants that sought a permit to operate a cannabis retail dispensary.  City hired HdL, a cannabis consulting company, to assist the Director in the first step of the review process.  All but one of the applicants passed the first step.  Appellant received the highest score – 1,646 out of a possible 1,650 points.

The second step was review by the Cannabis Permit Committee (Committee).  According to City's August 26, 2019 press release, the three members of the Committee – City's police chief, fire chief, and finance director – "reviewed the applications, reviewed the initial screening scores, and then interviewed the applicants.  Based on the interviews and review, the . . . [C]ommittee assigned numeric scores in merit list categories.  During the interviews, questions related to merit list categories were asked of each applicant.  The questions and scores were based on detailed criteria from a merit list.  (MBMC § 5.50.090(C-D).) . . . Consistent with their final merit list scores, the . . . [C]ommittee then recommended to the City Manager that commercial medical cannabis operation permits be issued to the top two merit list scorers."

The top two scorers were NHC-MB LLC, dba Natural Healing Center (NHC), and RCP Morro Bay (RCP).  NHC received a score of 96.99 percent.  RCP's score was 94.63 percent.  Appellant was in fifth place with a score of 88.40 percent.  City's press release dated July 17, 2019, stated that Committee had

3

"recommended that the City Manager move forward with NHC and [RCP]."

In 2019 the City Manager issued permits to NHC and RCP authorizing each to operate a cannabis retail dispensary. RCP changed its name to "Perfect Union," but we continue to refer to it as RCP. City's July 17, 2019 press release quoted the City Manager as saying, "'The City is moving forward with [NHC] and [RCP], in part, because they have demonstrated success operating cannabis retail businesses elsewhere in California, but also because of their top-notch safety plans, community fit and good neighbor practices.'"

*Trial Court's Ruling*

The trial court noted, "[Appellant] . . . contends that the City violated the law by taking discretionary actions as part of the permit process that were not permitted under MBMC Chapter 5.50. The core of [appellant's] claims arises out of the successful applicant[s'] changes in proposed locations during the review process."

NHC originally sought a permit for a property located on Main Street. Appellant complained that, during the first step of the review process, the Director had allowed NHC to amend its application to add a second property located on Morro Bay Boulevard. A permit was eventually issued for this property. NHC told the Director "[t]hat they had the opportunity to acquire the . . . Morro Bay Boulevard site and that they wanted to potentially supplement that location for their Main Street location." NHC preferred the Morro Bay Boulevard site over the Main Street site. Appellant argued that, pursuant to MBMC section 5.50.150, the Director did not have discretion to allow the

4

addition of the Morro Bay Boulevard location. The trial court disagreed.

Appellant claimed that, during the third step of the review process, the City Manager had violated MBMC section 5.50.150 by purporting to exercise his discretion to allow RCP to change the location of its cannabis dispensary. The change in location was necessary because the properties selected by NHC and RCP violated the ordinance's requirement that retail cannabis dispensaries be separated by a distance of more than 100 feet. (MBMC § 5.50.120C4.) The trial court again disagreed with appellant.

The trial court concluded: "The Court does not find that the City was prohibited by MBMC Chapter 5.50 from exercising its discretion in the ways described [by appellant], including with regard to application locations, nor does [appellant] show that any exercise of discretion by the City was arbitrary or capricious. [¶] The Court does not find that the City or its officers violated any provision of the Morro Bay Municipal Code Chapter 5.50, or any other law."

### Standard of Review: Petition for
### Writ of Traditional Mandate

Appellant's petition for writ of mandate is an ordinary or traditional mandamus proceeding pursuant to Code of Civil Procedure section 1085.[1] "A writ of traditional mandamus

---

[1] The difference between ordinary or traditional mandate and administrative mandate (Code Civ. Proc., § 1094.5) is that administrative mandate "'is restricted to agency decisions made in proceedings involving (a) a hearing, (b) presentation of evidence, and (c) findings of fact.'" (*Garrick Development Co. v. Hayward Unified School Dist.* (1992) 3 Cal.App.4th 320, 328.) "[O]rdinary mandate is used to review . . . decisions when [as

5

[citation] may be used to compel the performance of a duty that is purely ministerial in nature or to correct an abuse of discretion. [Citation.] The trial court and appellate court perform the same function in a traditional mandamus action, and we therefore do not undertake a review of the trial court's findings or conclusions." (*Khan v. Los Angeles City Employees' Retirement System* (2010) 187 Cal.App.4th 98, 105; see also *Friends of the Old Trees v. Department of Forestry and Fire Protection* (1997) 52 Cal.App.4th 1383, 1393 ["We are not undertaking a review of the trial court's findings or conclusions. Instead, 'we review the matter *without reference to the trial court's actions*'"].) However, "'we apply the substantial evidence test to the trial court's factual findings.'" (*Klajic v. Castaic Lake Water Agency* (2001) 90 Cal.App.4th 987, 995-996; see also *Abatti v. Imperial Irrigation District* (2020) 52 Cal.App.5th 236, 250.)

### *Violations of MBMC Section 50.50.150 Allegedly Committed by Director and City Manager*

MBMC section 5.50.150 provides, "Further rules, regulations, procedures and standards for the administration and implementation of this chapter may be adopted from time to time either by resolution or ordinance from the city council, by the director (upon authorization by resolution from the city council), or as further provided by this chapter." Appellant contends that, pursuant to section 5.50.150, neither the Director nor the City Manager had discretion to permit an applicant to change the

---

here] the agency was not required to hold an evidentiary hearing." (*Bunnett v. Regents of University of California* (1995) 35 Cal.App.4th 843, 848; see also *American Board of Cosmetic Surgery v. Medical Board of California* (2008) 162 Cal.App.4th 534, 547 & fn. 14.)

location of its cannabis dispensary.  Appellant argues:  The trial court erroneously found they "had discretion to unilaterally create and implement rules or make decisions whenever the ordinance purportedly was silent or did not expressly prohibit them from doing so."  "[T]he trial court *nullified* the mandatory [city council] approval provisions of Section 5.50.150 and, more importantly, contradicted and disregarded the clear legislative intent to ensure City officials only created and implemented rules and made decisions the City Council *approved, adopted or specifically authorized them to make.*"  "[T]he trial court's ruling that they both had inherent discretion to make rules or to act unilaterally whenever the ordinance did not specifically prohibit it constitutes reversible *legal error.*"[2]  "'Discretion . . . is the power conferred on public functionaries to act officially according to the dictates of their own judgment.'"  (*County of Los Angeles v. City of Los Angeles* (2013) 214 Cal.App.4th 643, 653-654.)

Appellant's argument involves a matter of statutory interpretation.  "The rules of statutory construction are applicable to local ordinances [citations], and the construction of a statute or ordinance is a question of law for the court."  (*Aptos Seascape Corp. v. County of Santa Cruz* (1982) 138 Cal.App.3d 484, 497.)  "'A person aggrieved by an agency determination has a right to independent judicial review of questions of law, such as those dealing with the interpretation and application of statutes . . . .'"  (*Van Wagner Communications, Inc. v. City of Los Angeles* (2000) 84 Cal.App.4th 499, 508.)  "'A reviewing court's fundamental task in construing a statute is to determine the

---

[2] But as we point out in the preceding section on the standard of review, we are not reviewing the trial court's rulings.

7

intent of the lawmakers so as to effectuate the purpose of the statute. . . .'" (*In re Israel O.* (2015) 233 Cal.App.4th 279, 287.)

<u>First Step of Review Process: Director's Grant of</u>
<u>NHC's Request to Add Second Location to Its Application</u>

MBMC section 5.50.070B.1.h. provides that an application for a permit shall include "[a] general description of the proposed operation, including the street address, parcel number, the total square footage of the site, and the characteristics of the surrounding area." Nothing in MBMC Chapter 5.50 suggests that, during the first step of the review process, the Director cannot authorize an applicant to change the location of its proposed cannabis retail operation. The Director testified, "I reviewed the City's code, and there was no prohibition against it; so I allowed them to move forward with the addition of [the new, preferred] location." Appellant contends that the Director lacked discretion to allow the addition.

MBMC section 5.50.080B supports the Director's authority to exercise such discretion. Section 5.50.080B provides: "If the director determines that the application is incomplete, the director shall notify the applicant in writing explaining the reasons thereof within sixty days of receipt of the application. Applicant shall have thirty days to submit a completed application, in accordance with the director's notification. If the application is resubmitted as incomplete, it shall be deemed abandoned. The applicant may then resubmit a new application for a new review pursuant to the requirements of this section." Section 5.50.080B shows that the original application is not set in stone. The Director may permit modifications to the application. Moreover, if an application is abandoned, the applicant may submit a new application with a different location

8

for its cannabis dispensary. It follows that, with the Director's permission, NHC could amend its original application to add a new, preferred location for its dispensary.

We reject appellant's interpretation of MBMC section 5.50.080B as "permit[ing] applicants to supplement applications *only* to rectify deficiencies in their initial submission that were specifically identified in writing by the Director." Appellant claims, "As its location was not identified as being deficient by the Director, NHC was *prohibited* under MBMC Sections 5.50.080B and 5.50.150 from adding a second location" to its application. Section 5.50.080B does not restrict the Director's discretion to permit an applicant to make changes in the application. It merely regulates the procedure to be followed when the Director determines that the application is incomplete.

The Director did not abuse his discretion in permitting NHC to add the new location. The Director explained that NHC had good reason for the change: "They indicated that the initial location they chose was too small for the operation and that they needed a larger location; and this became available while they were going through the process, and that's why they inquired as to whether they can supplement this location for the other." The original location was about 1,100 square feet, while the new location was "almost 4,400 square feet." Because of the larger size of the new location, NHC believed it could "generate more revenue" out of this location. The generation of more revenue would result in more tax income for City. City's July 17, 2019 press release stated: "In November 2018, Morro Bay voters . . . approved a cannabis tax, which the City Council subsequently set at 5 percent on cannabis retail sales. That tax would be applied

9

to NHC and [RCP] once they open their doors."  We cannot fault the Director for wanting to maximize City's tax revenue.

Even if we assume, for the purpose of discussion, that the Director did not have discretion to permit NHC to add a second location to its application, appellant would not be entitled to relief because it has failed to show that the addition of the second location was prejudicial error.  (Cal. Const., art. VI, § 13; Code Civ. Proc., § 475; *Lucas Valley Homeowners Assn. v. County of Marin* (1991) 233 Cal.App.3d 130, 147 ["Error occurring in an administrative proceeding will not vitiate the ruling unless it actually prejudices the petitioner"].)  The Committee recommended that permits be issued to the top two scorers.  If NHC had been disqualified, the top two scorers would have been RCP and Ethnobotanica.[3]  Thus, it is not reasonably probable that a permit would have been issued to appellant.

Third Step of Review Process: City Manager's Grant of RCP's Request to Change Location of Its Cannabis Dispensary

MBMC section 5.50.120C.4 provides, "No retail . . . operation shall locate within one hundred feet from another retail . . . operation."  NHC's and RCP's proposed cannabis dispensaries were within 100 feet of each other.  This was not surprising.  The trial court noted that City had argued:  "[W]hen reviewing multiple applications at the same time, there was always the potential of having a conflict [as to the 100-foot rule] with the

---

[3] The Committee's scores were as follows:
1. NHC – 96.99 percent
2. RCP – 94.63 percent
3. Ethnobotanica – 89.94 percent
4. SLO Retail Group, LLC – 88.65 percent
5. *Appellant – 88.40 percent*
6. Megan's Organic Market – 88.00 percent

permit winners. . . . [A] small zone existed for the business, and commercial space in Morro Bay is limited."[4] We take judicial notice that, according to the United States Census Bureau, in April 2020 the population of Morro Bay was 10,757.[5] (Evid. Code, §§ 452, subd. (h), 459, subd. (a).)

Appellant notes that the ordinance does not expressly grant the City Manager discretion to permit an applicant to change the location of its proposed cannabis dispensary to avoid violation of the 100-foot rule. Therefore, appellant argues, the City Manager was "required" to "disqualify NHC and/or RCP." "Simply put, the Manager had no legal authority or discretion to permit RCP to move after being selected for a permit . . . ." "[A]bsent approval from the City Council, applicants were *prohibited* from relocating."

We disagree. The ordinance should not be interpreted as forbidding the City Manager from allowing an applicant to change its location to comply with the 100-foot rule. Such an interpretation would impose an unwarranted hardship on one of the two applicants selected by the Committee and the City Manager. The unlucky applicant would have to begin the application process all over again with a new location that was

_____

[4] In its appellate brief City states, "With the exception of the location where RCP ultimately was awarded a permit, all of the applicants' properties were generally within a block or so of each other."

[5] <https://www.census.gov/quickfacts/fact/table/ morrobaycitycalifornia,oakdalecitycalifornia,suisuncity citycalifornia,universityofcaliforniadaviscdpcalifornia/ RHI825219> [as of April 26, 2022], archived at <http:// Perma.cc/F6D5-GFSB7>.

more than 100 feet away from the other applicant's location. This would entail an expensive waste of time and effort by City and the applicant required to move.

To satisfy the distance requirement, the City Manager permitted RCP to move to a different location on Quintana Road. One of the unsuccessful applicants in the second step of the review process – Megan's Organic Market – had designated the Quintana Road property as the site of its proposed cannabis dispensary. The City Manager testified that, after RCP had changed its location to the Quintana Road site, "we then did look back at Megan's [Organic] Market's application, which . . . was fully vetted by HdL, and was fully vetted by the cannabis review committee; and that information was very helpful in ensuring that that wouldn't have affected [RCP's] final score [determined by the Committee]."

But appellant claims that "RCP's location score would have been *5 points lower* if it had used [the Quintana Road location in its original application] since that property (assessed under Megan's [Organic] Market's application) scored 5 points lower than RCP's original location in final Committee interview scoring." In support of its claim, appellant refers us to page 280 of the Clerk's Transcript. The page shows the Committee's scores assigned to the applicants for each of nine factors. One factor was "Location."[6] Based on its original location, RCP's score for this single factor was 560 points. Based on the Quintana Road location, Megan's Organic Market's score for the same factor was

---

[6] The other scored factors were (1) qualifications of principals, (2) business plan, (3) storage and transportation plan, (4) air quality, (5) safety and security plan, (6) training, (7) retail – public information, and (8) distribution – product security.

555, five points less than RCP's location score. Appellant fails to explain how this five-point difference in one of the nine factors could have affected its rank in the Committee's scoring based on all nine factors. The Committee's overall score for second-place RCP (94.63 percent) was more than six percentage points higher than its overall score for fifth-place appellant (88.40 percent). Thus, appellant has not shown that it was prejudiced by the five-point lower score for the Quintana Road location as assessed under Megan's Organic Market's application.

The City Manager opined that "[i]t was not necessary" to require RCP to resubmit its application with the new Quintana Road location. He explained: "[RCP] hit all the barometers that we were looking for. We had an issue with location between the two [NHC and RCP], and we found an elegant solution, one . . . which included a location that had already been vetted by the very committee that [appellant is] saying we had to resubmit the whole package to just for that one element. [¶] . . . We don't need to redo the process. We knew who the best candidates were." "It doesn't say anything in the ordinance preventing me from [permitting RCP to move to a different location]." The City Manager was asked, "Is it fair to say that you exercised your discretion to allow [RCP] to move to a location other than what was in [its] application." He replied, "Yes."

The ordinance expressly gives substantial discretion to the City Manager in the third step of the review process. In determining whether a permit should be issued, the City Manager shall consider various factors including "all pertinent evidence timely submitted (*at the determination of the city manager*) by the applicant . . . ." (MBMC § 5.50.090E1, italics added.) "Each application shall be considered in its totality with

13

weight given to one criterion over another *as determined appropriate by the city manager* to further the maintenance and promotion of the health, safety and welfare of the residents and visitors of the city of Morro Bay." (*Id.*, § 5.50.090E2, italics added.) "The city manager may impose reasonable terms and conditions on the use of the permit, in addition to those specified in this chapter . . . ." (*Id.*, § 5.50.090F.) In view of the broad discretion granted to the City Manager, it cannot reasonably be inferred that the City Council intended to deny him the discretion to allow an applicant to change the location of its retail cannabis dispensary to comply with the 100-foot rule.

Appellant maintains that we should apply the rule of statutory construction, *expressio unius est exclusio alterius*. Pursuant to this rule, "'The expression of some things in a statute necessarily means the exclusion of other things not expressed.'" (*Dean v. Superior Court (Lever)* (1998) 62 Cal.App.4th 638, 641-642.) Appellant argues, "[B]y specifically conferring discretion on unrelated matters via different Ordinance provisions, the City Council expressed *no intention* to confer any discretion to act vis-à-vis the disputed matters," i.e., discretion to change the location of an applicant's cannabis dispensary to comply with the 100-foot rule.

"It is true that the canon of construction upon which [appellant relies] should be applied 'where appropriate and necessary to the just enforcement of the provisions of a statute.' [Citation.] Nevertheless, *expressio unius est exclusio alterius* is no magical incantation, nor does it refer to an immutable rule. Like all such guidelines, it has many exceptions . . . . More in point here, however, is the principle that such rules shall always "'be subordinated to the primary rule that the intent shall prevail

14

over the letter.""" (*Estate of Banerjee* (1978) 21 Cal.3d 527, 539, fn. omitted.)

The canon of construction does not apply here. There is no indication that the City Council intended to prohibit the City Manager from exercising discretion except in those specific instances where the ordinance expressly authorizes the exercise of discretion. There are many instances in the third-step review process where the City Manager may be called upon to exercise discretion. The City Council could not be expected to have anticipated all of them. "[W]e decline to apply the maxim *expressio unius est exclusio alterius* to the [ordinance] and thereby read an implicit ban on [changing the location of an applicant's cannabis dispensary to comply with the 100-foot rule]. Adding language into a statute 'violate[s] the cardinal rule of statutory construction that courts must not add provisions to statutes.' [Citation.] . . . [H]ad the [City Council] intended a ban on [changing an applicant's location to comply with the 100-foot rule], it could have explicitly enacted one." (*In re Sabrina H.* (2007) 149 Cal.App.4th 1403, 1412.)

The Committee and City Manager decided that RCP and NCP were the two best applicants. It would be pointless to restart the application process from scratch merely because RCP's and NCP's locations were within 100 feet of each other. "We cannot conclude that [the City Council] intended such absurd results." (*Fireman's Fund Ins. Co. v. Superior Court* (2011) 196 Cal.App.4th 1263, 1281.) """[A] statute "must be given a reasonable and common sense interpretation consistent with the apparent purpose and intention of the lawmakers, practical rather than technical in nature, which upon application will result in wise policy rather than mischief or absurdity." . . ."""

(*California Disability Services Association v. Bargmann* (2020) 52 Cal.App.5th 911, 916.)

Accordingly, in the third step of the review process, we construe MBMC chapter 5.50 as giving the City Manager discretion to allow an applicant to move its location to avoid a violation of the 100-foot rule. The City Manager did not abuse its discretion in permitting RCP to move to the Quintana Road property.

But even if the City Manager did not have the requisite discretion, appellant would not be entitled to relief because it has failed to show that it was prejudiced by the change of location. (See the discussion of prejudice at p. 10 and fn. 3, *ante*.) Since appellant's score (88.40 percent) put it in fifth place, the disqualification of RCP should have resulted in the issuance of a permit to the third-place finisher, Ethnobotanica.

*City Manager's Alleged Failure to Notify Appellant*

MBMC section 5.50.090E3 provides, "Notice of the [City Manager's] written determination shall be provided promptly to the applicant upon final determination. The determination shall articulate reasons in writing for the final determination and refer to merit list criteria." Appellant contends that the City Manager "failed to perform his ministerial duty to 'promptly' send a written notice to each applicant."

We need not determine whether the City Manager was required to give written notice to appellant. Appellant has not shown that it was prejudiced by the alleged lack of notice. Months before the City Manager made his final determination, appellant knew that it would not be selected as one of the two permittees. On June 21, 2019, the Director emailed appellant that it had "placed 5th" in the overall scoring and that City "will

16

be moving forward" with "the top two finalists," NHC and RCP. The Director "attached a copy of the score sheet from the Cannabis Review Committee interview." It was not until September 30, 2019, that the City Manager made his final determination in writing that permits would be issued to NHC and RCP. Appellant's petition for writ of mandate was filed on August 14, 2019, more than one month before the City Manager's final determination.

## *Disposition*

The judgment is affirmed. City shall recover its costs on appeal.[7]

<u>NOT TO BE PUBLISHED.</u>

YEGAN, J.

We concur:

GILBERT, P. J.

PERREN, J.

---

[7] SLO Retail Group, LLC (SLO), one of the unsuccessful applicants for a permit, was named as a defendant in appellant's petition and filed a respondent's brief in the present appeal. We do not award costs to SLO because it is not a prevailing party. In its brief SLO contended, "If this Court finds [appellant's] arguments compelling enough to remand and strip RCP and NHC of their Permits," then "[t]he first Permit vacancy . . . must go to SLO because SLO . . . scored higher than [appellant] per the [merit scores determined by the Committee]." (See fn. 3 at p. 10, *ante*.)

17

Ginger E. Garrett, Judge

Superior Court County of San Luis Obispo

_____

Law Offices of Jeff Augustini and Jeff Augustini, for Plaintiff and Appellant.

Aleshire & Wynder and Michelle E. Sassano, for Defendant and Respondent, City of Morro Bay.

Sheridan Law Group and Eric R. Garner, for Defendant and Respondent, RCP Morro Bay.

Law Offices of Jane Heath and Jane E. Heath, for Defendant and Respondent, NHC-MB.

Bonnheim & Bonnheim and Travis Bonnheim, for Defendant and Respondent, SLO Retail Group.